375 So.2d 1006 (1979)
Herbert N. CROOK and Mrs. Bertrez Weems Wheless
v.
The COMMERCIAL NATIONAL BANK AND TRUST COMPANY et al.
No. 50898.
Supreme Court of Mississippi.
October 3, 1979.
Rehearing Denied October 31, 1979.
*1007 Pack, Ratcliff & Ratcliff, Kalford C. Ratcliff, Laurel, for appellants.
Holifield & Harper, Matthew Harper, Laurel, Gerald, Brand, Watters, Cox & Hemleben, Martha W. Gerald, Allie S. Povall, Jr., Brunini, Grantham, Grower & Hewes, Ed Brunini, Jr., Jackson, Stewart J. Gilchrist, Laurel, A.F. Summer, Atty. Gen., by Jean R. Richey, Sp. Asst. Atty. Gen., Jackson, for appellees.
Before SUGG, WALKER and COFER, JJ.
WALKER, J., for the Court:
This is an appeal from the Chancery Court of the Second Judicial District of Jones County, Mississippi, which held that there was no violation of the mortmain section of the Mississippi Constitution[1] and statutes of mortmain[2] by the Commercial National Bank and Trust Company, trustee of the trust estate of Charles Samuel Weems, deceased, in holding certain real property and royalty interest for a period of more than ten years after the death of Mr. Weems and his brother in the charitable trust created by Mr. Weems in his will. We affirm.
We are concerned here with the part of our mortmain laws which prohibits a charitable, religious, educational or civil institution from holding land devised to it for a period of more than ten years under penalty that it will revert to the heirs of the testator.
The appellants, Herbert N. Crook and Mrs. Bertrez Weems Wheless, sought recovery in their bill of complaint, as amended, of lands, including minerals, mineral rights and royalties, which were devised by Charles Samuel Weems in trust to the Commercial National Bank and Trust Company of Laurel for the benefit of Talmage D. Weems, the incompetent brother of said testator, who was an inmate of East Mississippi State Hospital. Upon Talmage's death, the income from the trust was to go to the East Mississippi Insane Asylum for the benefit of its needy patients.
*1008 The real property in the trust was held by the Bank for more than ten years after the death of Charles Samuel Weems and has been held by the Bank for more than ten years since the death of his brother, Talmage D. Weems. Charles Samuel Weems died December 3, 1956, and Talmage D. Weems died February 3, 1965.
The full text of the will of Charles Samuel Weems was as follows:
I, Charles S. Weems, hereby will and deed to Commercial National Bank and Trust Company, Laurel, Mississippi, in trust my entire estate, real and personal and all monies to be made a trust fund for my brother Talmage Dewitt Weems at present a patient in the East Mississippi Insane Hospital, Meridian, Miss. I give to Talmage D. Weems, the entire income from this trust fund after Talmage D. Weems death, I give the income from this trust fund to the East Insane Asylum, Meridian, Miss. to buy things for needy patients that the State does not buy. I appoint the Commercial National Bank and Trust Company, Laurel, Miss., administrator and guardian for Talmage Dewitt Weems.
I solemly [sic] and affirmly swear this is my last will and testament.
Crook and Wheless are the sole surviving heirs of the two brothers and contend that the will sets up a trust in a nonproscribed institution [Commercial National Bank and Trust Company] for the benefit of a proscribed institution [East Mississippi Insane Asylum] and that the mortmain provisions of Mississippi Law were violated when the trustee Bank held the real property for more than ten years after the death of the testator's brother, Talmage Dewitt Weems, and that the real property reverted to them by operation of law.
Prior to the enactment of the present section 270 of the Mississippi Constitution, the old section 269 of the Constitution, which was repealed, provided as follows:
Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, of freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.
Old section 270 of the Constitution, which has now been repealed, provided as follows:
Every legacy, gift, or bequest of money or personal property, or of any interest, benefit, or use therein, either direct, implied, or otherwise, contained in any last will and testament or codicil, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association, either for its own use or benefit or for the purpose of being given or appropriated to charitable uses, shall be null and void, and the distributees shall take the same as though no such testamentary disposition had been made.
These old sections of the Constitution prohibited a devise or bequest of land in any form, either by title or in trust, or of money or personal property or any interest therein to any religious or ecclesiastical corporation or any religious or ecclesiastical society or religious denomination or association for its own use or for the purpose of being given or appropriated to charitable uses.
There being a great deal of dissatisfaction with those old constitutional provisions, the present section 270 was ratified by the electorate in 1940 and provides as follows:

*1009 No person leaving a spouse or child, or descendants of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child, and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.
Provided, however, that any land devised, not in violation of this section, to any charitable, religious, educational, or civil institution may be legally owned, and further may be held by the devisee for a period of not longer than ten years after such devise becomes effective, during which time such land and improvements thereon shall be taxed as any other land held by any other person, unless exempted by some specific statute. (Emphasis added).
The present section 270 of the Constitution very effectively protects against the alleged evils, either real or fanciful, that were thought to exist prior to the adoption of mortmain laws, see, Methodist Hospital v. Slack, 330 So.2d 882 (Miss. 1976), that is (1) the present section prevents one who would not be charitable at his own expense to be so at the expense of his heirs by limiting the amount of his estate that may be bequeathed or devised, if he leaves a spouse or child or descendants of child, to no more than one-third of his estate to any charitable, religious, educational or civil institution, to the exclusion of such spouse or child or descendants of the child; (2) it protects a testator's heirs from improper influences when the testator is in extremis by providing that such bequest or devise must be executed at least ninety days before the death of the testator; and (3) it prevents the accumulation by devise, of excessive quantities of land in proscribed institutions since such lands may be held no longer than ten years. We are only concerned with the last of these in this case.
It should be noted at this point that there is no prohibition against making a gift of land to a charitable, religious, educational or civil institution during a person's lifetime or to create an inter vivos trust with land therein for the benefit of any one or more of those institutions. Nor is there any prohibition against devising land to a trust for the benefit of a person or entity not coming within the class of those proscribed, even though the land is held for a period of more than ten years. It is obvious, therefore, that mortmain laws do not condemn all trusts containing land that may be held indefinitely for the benefit of charitable, religious, educational or civil institutions but are to prevent the accumulation of lands under the control of those institutions by devise. This is evident when the old mortmain provisions which were repealed in 1940 are compared with the new provisions adopted at that same time.
It is our opinion that the purpose of the change was to continue the prohibition against the holding, for more than ten years, of land devised to proscribed institutions, but at the same time to relax the prohibition against placing land in trust for the benefit of a proscribed institution. However, the trust arrangement must not be such as to circumvent the mortmain laws by leaving the ultimate control of the land in a proscribed institution, as the alleged trust in Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959), would have done and as did the trust in Methodist Hospital, supra.
In Mississippi College, supra, we said, as quoted in Methodist Hospital, supra:
There the heirs at law of Dr. J.V. May filed a bill of complaint against Mississippi College and others to remove Mississippi College's claim to certain property as a cloud on their title. In that case, Item IV of Dr. May's will provided:
"To Mississippi College, Clinton, Mississippi, I devise and bequeath my 465 acre farm in district two Claiborne County Mississippi, at the proper time the same is to be converted into cash and held as a perpetual trust fund or endowment, and the proceeds therefrom shall annually go to the support *1010 of Christian Education in that institution, ..." (235 Miss. at 209, 108 So.2d at 706).
Dr. May died in 1940, and ten years expired in 1950, but Mississippi College within that time did not sell or convey the land. Hence it was charged that, upon expiration of the ten years, the lands immediately reverted to the complainants, the heirs of Dr. May.
The college argued that Dr. May's will designated Mississippi College as a mere trustee to hold the land and proceeds from it for scholarships to students within designated categories; that the devise was not within Section 270 arguing that the section refers only to a devise of land directly to certain institutions; and, that the conveyance to the college as trustee for the benefit of others was not such a prohibited direct conveyance of title to the college, and that it held only a legal title for the benefit of others. In answer to their contention, the Court said:
We do not think that a bequest or devise to an eleemosynary corporation in trust for the very purposes for which it is organized prevents operation of the provisions of Sec. 270. Hastings v. Rathbone, 1922, 194 Iowa 177, 188 N.W. 960, 23 A.L.R. 392; 76 C.J.S. Religious Societies § 51c; 11 C.J., Charities, Sec. 68, page 351; 14 C.J.S. Charities § 45, page 498. (330 So.2d at 888-889).
It must be noted that in that case, if the devise had been construed to be in the form of a trust, which it was not, the trustees of the trust would have been the same as the trustees of Mississippi College, with the proceeds from the trust to go to the support of Christian education in that institution. As a practical matter, the trustees of Mississippi College would have exercised the same control over the land devised under Dr. May's will as they did of other property belonging to the institution. Under those circumstances the Court was of the opinion that a bequest or devise to an eleemosynary corporation, such as Mississippi College, in trust for the very purposes for which it is organized would bring into operation the mortmain constitutional section and statutes.
In the Methodist Hospital case, this Court held that the mortmain provisions were violated when Mammie M. Thomas died testate in Memphis, Tennessee, on or about November 18, 1958, leaving an estate, after specific bequest, valued in 1963 at $2,000,000, including a 167/216 undivided interest in Chicoa Plantation in Yazoo County, Mississippi subject to certain conditions.
After itemizing numerous specific bequests, Miss Thomas, in Item XXII of the will, left her 167/216 interest in Chicora Plantation to the Union Planters National Bank of Memphis, Tennessee, as trustee. The trust was for a period of fifteen years and the trustee was directed to rent out Miss Thomas' interest in the Plantation, pay taxes and other expenses. Any net revenue was to become part of the residue of her estate and pass under the terms of the will. The will provided that at the end of the fifteen-year-trust period Miss Thomas' interest in Chicora Plantation was to "become part of the residue of my estate and pass under the provisions of this will." The same paragraph of the will provided for an early termination of the trust in the event that oil was discovered; however, it is undisputed that oil was not discovered on the property.
The trust contained no power in the trustee to sell testatrix's interest in Chicora and consequently the trustee Bank held it more than ten years.
We emphasize that under the above arrangement the trustee was to hold Chicora for a period of fifteen years, together with all of the net proceeds accumulated from renting it. At the end of the fifteen-year period, Chicora and all sums accumulated over the fifteen-year period were to be turned over to the Methodist Hospital, if the hospital accepted the conditions of the devise, which it did. The trustee was merely a straw man, without authority to sell or dispose of Chicora. Its ultimate disposition would be left to the Methodist Hospital, which, under their theory, could then hold Chicora an additional ten years. If this *1011 arrangement had been condoned, Chicora could have effectively been tied up and held for the sole benefit of Methodist Hospital for twenty-five years, fifteen years in excess of the time permitted by the mortmain statutes, with the ultimate control of Chicora to be decided by the Methodist Hospital, a proscribed institution. The Court was of the opinion that such a devise would effectively circumvent the mortmain provisions of our law. The reasoning was that if a trustee could hold land for a period of fifteen years for the sole benefit of a proscribed institution, then there was no reason why the time could not be extended indefinitely, after which it would pass to the proscribed institution which could hold it for an additional ten years. This arrangement was condemned by the Court and we held that Chicora Plantation reverted to the heirs at law of Miss Thomas. The decisive factor which caused this arrangement to fail was that the nonproscribed trustee was, under conditions of the trust, to hold Chicora to pass under the residue provisions of the will  that is, title to Chicora was to pass to Methodist Hospital after fifteen years. The trustee could not, even in the exercise of prudent judgment, sell Chicora and put it back in the channels of commerce.
In a specially concurring opinion by Justice Hall in the May case, he said:
I am unwilling to give my assent to any subterfuge whereby the effect of Sec. 270 can be nullified, especially on the theory that the land is merely held in trust and may be held indefinitely. If we should ever accept such a theory, we would simply be repealing Sec. 270 in toto, which I am unwilling to do. (235 Miss. at 229, 108 So.2d at 715).
This Court adopted that principle in Methodist Hospital. The trust in the Methodist Hospital case did just what Justice Hall foresaw and condemned in his specially concurring opinion. The trust arrangement created by the will of Charles Samuel Weems is different from the arrangement in the May case or the Methodist Hospital case. The situation here is that Mr. Weems, by his will, created a testamentary trust with the Commercial National Bank and Trust Company of Laurel as trustee. The trust was devised real property by that will, with the income therefrom to be used first for the support of his brother, Talmage D. Weems, now deceased, who was a patient in the East Mississippi Insane Asylum (now the East Mississippi State Hospital), Meridian, Mississippi. The will further provided that upon the death of Talmage D. Weems that "I give the income from this trust to the East Mississippi Insane Asylum, Meridian, Miss. to buy things for needy patients that the State does not buy."
The appellants argue that such an arrangement violates the mortmain provisions of our law as these laws were construed in the May and Methodist Hospital cases. We disagree for the following reasons: (1) The trustee of the Weems' trust is not the trustee, owner or management of the East Mississippi State Hospital, as would have been the case if the Court had held that a trust existed in Mississippi College v. May, supra, (2) the devise of the property under the Weems' will contains no restriction upon alienation by the trustee of the property devised to it as did the trust in Methodist Hospital. The trustee, therefore, was charged with the same duty as any other trustee holding property for the generation of income, to deal with the property as would any prudent manager of that type trust estate. This duty would require the trustee in the exercise of reasonable and prudent management, unless instructed otherwise by the terms of the trust, to sell or otherwise dispose of the trust property, if prudent management so dictated. Therefore, there does not exist the danger of the real property being arbitrarily held for an indefinite period.
Moreover, the beneficiary of the proceeds from the trust would have no right to possession of, nor have any control over the management or disposition of, the property. Therefore, there is no fear that large amounts of real property will accumulate under the control of a proscribed institution.
*1012 We are therefore of the opinion that land or real property may be left in a charitable testamentary trust created by the testator's own will without being subjected to the mortmain requirement that the property must be sold within ten years, provided that (1) there are no restrictions placed on the trustee with reference to the alienation of such property, and (2) such property shall not pass to a proscribed institution after the expiration of the trust or prior thereto except by a direct arms-length sale, and (3) the trustee shall be charged with the duty, as provided by law, that he deal with and manage the property as any prudent trustee would, including selling or disposing thereof as prudence would dictate, and (4) the trustee or trustees are not the same owners, management or trustees of a proscribed institution which is designated to share in the income or benefits of the trust.
We feel that this construction of the mortmain constitutional provisions and statutes satisfies the letter of the law as well as its spirit and intent.
Although for a different reason than that found by the lower court, we are of the opinion that the lower court was correct in holding that the Weems' trustee did not violate the mortmain provisions of our laws by holding the real property for more than ten years after the death of Talmage Dewitt Weems.
AFFIRMED.
ROBERTSON, P.J., and BROOM, LEE and COFER, JJ., concur.
SUGG, J., dissents.
PATTERSON, C.J., SMITH, P.J., and BOWLING, J., took no part.
SUGG, Justice, dissenting:
Section 270 of the Mississippi Constitution of 1890 (Amended 1940) authorizes a devise of lands to any charitable, religious, educational or civil institution to be held by such institution "for a period of not longer than ten years after such devise becomes effective."
I dissent from the majority opinion because it permits East Mississippi State Hospital, a civil institution, to do indirectly what it cannot do directly. The majority opinion permits a proscribed institution to hold land devised to it for more than ten years, if the land is devised to a trustee independent of the proscribed institution. In my opinion, this is contrary to our decision in Methodist Hospital v. Slack, 330 So.2d 882 (Miss. 1972).
NOTES
[1] Miss.Const. art. 14, § 270 (1890, Amended 1940).
[2] Miss. Code Ann. § 91-5-31 (1972).